**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SCOTT PERNO,<br><br>                  Plaintiff,<br><br>v.<br><br>CHRYSLER GROUP, LLC, ABC CORPS, 1-10, JOHN DOES 1-10,<br><br>                  Defendants. | Civil Action No. 10-5100 (WJM)<br><br>1:CV-12-416<br><br>**OPINION** |



FILED
HARRISBURG, PA
FEB 2 2 2013
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

**FALK, U.S.M.J.**

    Before the Court is a motion by Defendant, Chrysler Group LLC, to transfer venue pursuant to 28 U.S.C § 1412 to the United States District Court for the Southern District of New York ("SDNY") or the Bankruptcy Court for the SDNY. [CM/ECF No. 3.] The motion is opposed. Oral argument was not heard. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion to transfer is **granted**, and the case is transferred to the SDNY.

## INTRODUCTION

    This case involves Plaintiff's purchase of a Jeep Liberty automobile, a prior state court lawsuit and settlement, and the bankruptcy of Chrysler LLC and 24 related affiliates and subsidiaries.

    In August 2010, Plaintiff filed the present complaint in New Jersey Superior Court for alleged violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.; the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*.; and state law. He contends that a Jeep Liberty he purchased from the now bankrupt Chrysler LLC is covered by a Service Contract to which the Defendant is the successor in interest. Defendant, Chrysler Group LLC, the purchaser of bankrupt Chrysler's assets, counters that it has no liability under the Service Contract based upon an Order entered by the United States Bankruptcy Court in the Southern District of New York as part of the bankruptcy. The issue to be decided is whether this Court or the SDNY is the most appropriate venue.

# FACTS AND PROCEDURAL HISTORY

### A. The Prior Suit

In November 2005, Plaintiff purchased a Jeep Liberty automobile with a warranty from DaimlerChrysler Corporation through Franklin Sussex Auto Mall in Sussex, New Jersey. (Compl. ¶ 5.) At some point, the vehicle allegedly "broke down and ceased running." (Compl. ¶ 7.) In April 2008, Plaintiff filed a lawsuit in New Jersey Superior Court alleging breach of the Jeep's warranty. (Compl. ¶ 9; Certification of Mark W. Skanes, Esq. ("Skanes Cert.") ¶ 3.) The case settled; as part of the settlement, Plaintiff was issued a "Chrysler Maximum Extended Service Contract" (the "Service Contract") for 100,000 miles and five years with a "zero deductible and . . . a loaner car if the vehicle had to be kept overnight." (Compl. ¶ 9.) The Service Contract was issued by Chrysler Service Contracts, Inc. (Skanes Cert. ¶ 3.)

### B. The Bankruptcy Proceeding

On April 30, 2009, Chrysler LLC, Chrysler Service Contracts, Inc., and 23 other affiliated companies (the "Debtors) filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York, see In re Old Carco LLC (f/k/a Chryler LLC), No. 09-50002 (Bank. S.D.N.Y.). (Skanes Cert. ¶ 4.)[1]

On May 31, 2009, the Bankruptcy Court issued an opinion granting the Debtors' motion to sell substantially all of their assets. See In re Chrysler LLC, 405 B.R. 84 (S.D.N.Y. 2009), aff'd 576 F.3d 108 (2d Cir. 2009), vacated as moot sub. nom. Ind. State Police Pension Tr. v. Chysler LLC, 130 S. Ct. 1015 (2009). On June 1, 2009, in accordance with its Opinion, the Bankruptcy Court entered an 49 page Order: "(I) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures, and (III) Granting Related Relief" ("the Sale Order"). (See Sale Order, attached as Exhibit B to Def.'s Mot.; CM/ECF No. 3-3.) The Sale Order addressed whether Chrysler Group, LLC -- the purchaser in bankruptcy and defendant here -- would be responsible for the liabilities of the Debtors:

---

[1] Plaintiff's Jeep Liberty was purchased from was DaimlerChrysler Corporation. DamilerChrysler Corporation became DaimlerChrysler Company LLC and then eventually Chrysler LLC. (Skanes Cert. ¶ 3 n.1.) Chrysler LLC is now known as "Old Carco LLC." (Id.) Likewise, Chrysler Service Contracts, Inc. is now known as "Old Carco Service Contracts, Inc." (Skanes Cert. ¶ 3 n.2.)

2

> Except for the assumed liabilities expressly set forth in the purchase agreement or described therein . . none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any claim that (a) arose prior to the closing date, (b) relates to the production of vehicles prior to the Closing Date or (c) is otherwise assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. The Purchaser shall not be deemed . . . to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors . . . (b) have, *de facto*, or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.

(Sale Order ¶ 35.)

The Sale Order also addressed whether Chrysler Group would be liable for state breach of warranty claims and claims under the Magnuson-Moss Warranty Act:

> Notwithstanding anything else contained herein or in the Purchase Agreement, in connection with the purchase of the Debtor's brands and related Purchased Assets, the Purchaser, from and after the Closing, will recognize, honor and pay liabilities under Lemon Laws for additional repairs, refunds, partial refunds (monetary damages) or replacement of a defective vehicle (including reasonable attorneys' fees, if any, required to be paid under such Lemon Laws and necessarily incurred in obtaining those remedies), and for any regulatory obligations under such Lemon Laws arising now, including but not limited to cases resolved pre-petition or in the future, on vehicles manufactured by the Debtor in the five years prior to the Closing (without extending any statute of limitations provided under such Lemon Laws), but in any event not including punitive, exemplary, special, consequential or multiple damages or penalties and not including any claims for personal injury or other consequential damages that may be asserted in relationship to such vehicles under the Lemon Laws. As used herein, "Lemon Law" means a federal or state statute, including, but not limited to, claims under the Magnuson-Moss Warranty Act based on or in conjunction with a state breach of warranty claim, requiring a manufacturer to provide a consumer remedy when the

3

> manufacturer is unable to conform the vehicle to the warranty after a reasonable number of attempts as defined in the applicable statute.

(Sale Order ¶ 19.)

The Bankruptcy Court retained jurisdiction to "interpret, enforce, and implement the terms and provisions of [the] Sale Order and Purchase Agreement." (Id. at ¶ 43.) The Bankruptcy Court has also made a point of noting that it has "special expertise regarding the meaning of its own order," and that "its interpretation is entitled to deference." Wolff v. Chrysler Group, slip op. at 13 (Adv. Proc. No. 10-5007, S.D.N.Y., July 30, 2010) (attached to Def's Mot. at Ex. A; CM/ECF NO. 3-1.)

### C. Present Suit

On August 30, 2010, Plaintiff filed his complaint in New Jersey Superior Court. He alleges that in February 2010, the Jeep required additional repairs totaling forty-two days of service, and that he was charged for the repairs and denied a loaner car in violation of the 2008 Service Contract. (Compl. ¶¶ 10-13.) Plaintiff named Chrysler Group, LLC as the sole defendant, taking the position that it is the "successor in interest for Chrysler LLC." (Compl. ¶ 2.)

On October 4, 2010, Defendant removed the case to this Court under 28 U.S.C. §§ 1331, 1334, 1441, and 1452. Defendant claims that outcome of the suit "depends on how the Bankruptcy Court's June 1, 2009 Sale Order is construed," (Notice of Removal, ¶ 9), and therefore, federal jurisdiction is proper under Sections 1334 and 1452, which provide for removal of state court actions that "arise in," "arise[] under" or "relate to" a Title 11 bankruptcy proceeding. See 28 U.S.C. §§ 1334(b), 1452(a).

### D. Parties' Arguments on Transfer

Defendant contends that Chrysler Group LLC did not manufacture Plaintiff's Jeep; did not issue the Service Contract at issue; is not liable under the Service Contract; was not party to the 2008 settlement agreement; and, in fact, did not even *exist* at the time the Service Contract was issued. (Skanes Cert. ¶¶ 8-9.) Defendant contends that the threshold issue to be decided is whether it has somehow "assumed" liability for the bankrupt Chrysler entities, which necessarily requires an interpretation of the Sale Order. (Def.'s Br. 5-6; Reply Br. 5-6.) In short, Defendant contends that it could not be a successor in interest to Chrysler without the bankruptcy, and that, in fact, absent the Sale Order, there would be nothing upon which Plaintiff could support his claim. (Def.'s Reply Br. 5-6, 10.) Thus, Defendant contends the interests of justice require transfer to the Southern District of New York to ensure that Bankruptcy Judge that issued the Sale Order and retained jurisdiction to enforce it is the Judge that determines liability in this

case. (Def.'s Reply Br. 5-6, 10.) Defendant cites at least eight cases that have been transferred to the SDNY for precisely this reason.[2]

Plaintiff argues that this is a localized dispute. The Jeep was purchased in New Jersey by a New Jersey resident and was repaired in New Jersey. Plaintiff further claims that the Sale Order is not implicated because the alleged breach occurred in 2010, which is after the Bankruptcy Court's Order was issued. (Pl.'s Br. 4-5.) Finally, Plaintiff claims that transfer is not proper because this complaint pleads state law claims that do not implicate bankruptcy or Title 11. (Id.)

## DISCUSSION

### A. Legal Standard

28 U.S.C § 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interests of justice or for the convenience of the parties." Id. This provision allows for transfer in the interests of justice *or* for the convenience of the parties. See, e.g., Clark v. Chysler Group, LLC, No. 10-3030, 2010 WL 4486927, at *5 (E.D. Pa. Nov. 5, 2010); In re Dunmore Homes, Inc., 380 B.R. 663, 670 (S.D.N.Y. 2008) ("Section 1412 is worded in the disjunctive allowing a case to be transferred under either the interest of rationale or the convenience of parties rationale."). Transfer under Section 1412 is similar to transfer under 1404(a), and courts generally consider similar factors. See, e.g., In re Emerson Radio Corp., 52 F.3d 50, 55 (3d Cir. 1995) ("[S]ection 1412 largely includes the same criteria for transfer of cases as section 1404(a) . . .").

Defendant moves to transfer under the interests of justice prong. The interests of justice prong is "broad and flexible" and applied on a case-by-case basis. See Gulf States Exploration Co. v. Manville Forest Prod. Corp., 896 F.2d 1384, 1391 (2d Cir. 1990). A non-exhaustive list of factors that are may be considered when determining whether transfer in the interests of justice is appropriate under Section 1412 include: (1) the economics of estate administration; (2) a presumption in favor of the home court; (3)

---

[2] These cases include: Clark v. Chysler Group, LLC, No. 10-3030, 2010 WL 4486927 (E.D. Pa. Nov. 5, 2010); Shatzki v. Abrams, No. 09-2046, 2010 WL 148183 (E.D. Cal. Jan. 12, 2010); Doss v. Chrysler Group, LLC, No. 09-2130, 2009 WL 4730932 (D. Ariz. Dec. 7, 2009); Cooper v. Daimler AG, No. 09-2507, 2009 WL 4730306 (N.D. Ga. Dec. 3, 2009); Monk v. Daimler AG, No. 09-2511, 2009 WL 4730314 (N.D. Ga. Dec. 3, 2009); Wolff v. Chrysler Group, No. 10-34, Slip Op. (C.D. Cal. Feb. 22, 2010) (attached to Def.'s Mot., Ex. F); Hunyh v. Chrysler Group, LLC, No. 10-285, Slip Op. (C.D. Cal. May 7, 2010) (Def.'s Mot., Ex. G); Carpenter v. Chrysler, LLC, No. 10-289, Slip Op. (W.D. Ok. May 17, 2010) (Def.'s Mot., Ex. H).

judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) the enforceability of any judgment; and (7) plaintiff's choice of forum. See, e.g., id; Cooper v. Daimler AG, No. 09-2507, 2009 WL 4730306, at *4 (N.D. Ga. Dec. 3, 2009); In re Bruno's Inc., 227 B.R. 311, 324-25 (N.D. Ala. 1998).

Generally, courts have concluded that when civil actions are related to a pending bankruptcy proceeding, there is a presumption that the district where the bankruptcy case is pending is the proper venue. See, e.g., Clark, 2010 WL 4486927, at *6 (transferring Magnuson-Moss claim against Chrysler Group to Southern District of New York, noting "[w]hen a case in which transfer is sought is one related to a bankruptcy proceeding, the district where the bankruptcy action is pending is generally the appropriate venue."); Toth v. Bodyonics, Ltd., No. 06-1617, 2007 WL 792172, at *2 (E.D. Pa. Mar. 15, 2007); Abrams v. General Nutrition Co., No. 06-1820, 2006 WL 2739642, at *9 (D.N.J. Sept. 25, 2006); Krystal Cadillac v. General Motors Corp., 232 B.R. 622, 627 (E.D. Pa. 1999).

**B.     Application**

Transfer is appropriate because it is necessary to interpret the Sale Order to determine whether Defendant has assumed any liability in this case. Plaintiff's complaint specifically alleges that Defendant is a successor in interest to Chrysler LLC, (Compl., ¶ 2), and thus has assumed liability for the Service Contract issued as part of the 2008 settlement. Defendant disagrees. Although Plaintiff argues that the bankruptcy order is not implicated, Chrysler Group has been named as a Defendant solely because Plaintiff alleges it now stands in bankrupt Chrysler's shoes. Thus, the scope of the bankruptcy order is clearly an issue. Moreover, the bankruptcy court has expressly retained jurisdiction over the Sale Order to interpret its terms. (Sale Order ¶ 43.) Allowing for different courts in different jurisdictions to interpret the terms of the Sale Order creates the possibility for inconsistent determinations, inconsistent liability to the Defendant, and needless confusion.

Moreover, Defendant cites to eight (8) decisions transferring cases against Chrysler Group to the Southern District of New York for referral to the bankruptcy court. These cases all present similar issues relating to the interpretation and applicability of the Sale Order. These cases demonstrate that uniform interpretation of the Sale Order by the issuing court is of paramount importance.

Finally, there will be no inconvenience to the Plaintiff or to any witnesses due to transfer. Defendant has specifically agreed that "to the extent the Bankruptcy Court finds that certain claims asserted by Plaintiff in the Complaint were assumed from Chrysler Group," Defendant will "consent to remand those remaining claims to the state court of origin for resolution." (Def.'s Reply Br. 8.) Based on similar representations, other courts have transferred Chrysler cases to the Southern District. See, e.g., Clark, 2010 WL

4486927, at *9 ("In addition, the Court recognizes that allowing the Bankruptcy Court to interpret its Sale Order to determine the threshold issue regarding Defendant's liability on Plaintiff's claims does not preclude the case from ultimately being returned to a Pennsylvania court for disposition. If the Bankruptcy Court determines that . . . Defendant assumed liability for breach of a service contract under the [Magnuson-Moss Act], then the Bankruptcy Court may remand the case back to the Court of Common Pleas of Philadelphia County for resolution of Defendant's liability, if any, to Plaintiff."). Thus, Plaintiff's argument relating to the convenience of the parties and witnesses is not persuasive.[3]

Transfer to the SDNY is appropriate in this case. Rather than transferring directly to the Bankruptcy Court, the Court will adhere to the general rule that transfer should be to the District Court for referral to the Bankruptcy Court in that district. See Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1212 (3d Cir. 1991); Resource Club, Ltd. v. Designer License Holding Co., LLC, No. 10-412, 2010 WL 2035830, at *4 (D.N.J. May 21, 2010) ("The Court hereby grants . . . transfer . . . to the Southern District of New York pursuant to 28 U.S.C. § 1412, which presumably will transfer the case to the Bankruptcy Court."); Meyers v. Heffernan, No. 10-862, 2010 WL 1009976, at *1 (D.N.J. Mar. 15, 2010) (proper procedure is to transfer to coordinate district court for referral to bankruptcy court).

---

[3] Plaintiff argues that a presumption in favor of transfer is not appropriate in this case because it does not implicate Title 11. (Pl.'s Br. 5-6.) The Court need not apply a presumption in favor of transfer in order to determine it is appropriate in this case. Putting that aside, this case does implicate Title 11. A civil proceeding "arises under" Title 11 if the action involves the interpretation of a bankruptcy order. See In re Allegheny Health, Educ. & Res. Found., 383 F.3d 169, 175-76 (3d Cir. 2004); In re Franklin, 802 F.2d 324, 326 (9th Cir. 1986). A civil proceeding "arises in" Title 11 if it is a proceeding that is "not based on any right expressly created by Title 11, but nonetheless, would have no existence outside of the bankruptcy." In re Robbins Co., Inc., 86 F.3d 364, 372 (4th Cir. 1996) (quotation omitted); see also U.S. Tr.v. Gryphon at Stone Mason, Inc., 166 F.3d 552, 556 (3d Cir. 1999). Finally, a civil action "relates to" a bankruptcy proceeding if, among other things, "the outcome could alter the debtors' rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995). All three grounds are met in this case.

## **CONCLUSION**

For the above stated reasons, Defendant's motion to transfer is **granted**. An appropriate Order will be entered.

s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**Dated: March 10, 2011**