

AUG - 6 2013

## IN THE
## COURT OF APPEALS FOR THE THIRD CIRCUIT

Court of Appeals No.: **13-2105** (App. # 12-02081, 3rd Cir. 1/17/13).
District Court No.: **(M.D. Pa. Civ. No. 12-cv-0416)**

**ROSS A. FIORANI, Et. al.**
Appellants, Pro-Se

v.

**CHRYSLER GROUP, LLC., Et. al.**
Appellees,
=====================================\

### APPELLANT'S PETITION FOR REHEARING, REHEARING EN BANC

Appellant, Ross Fiorani, pro-se requests this Court grant this case a *rehearing* or *rehearing en banc*, pursuant to the Fed. R. App. P. 35 and 40, and in accordance with this Circuit's LAR 35 and 40, as directed by this court's clerk.

Appellant Fiorani maintains and asserts to this Court that the three-judge panel erred in their omissions when it issued its' judgment, Order reversing and remanding to the district court on Plaintiff Fiorani's appeal of the improper order of dismissal of that district court's. In or about April or May 2013, several clerks had previously sent denials or rejections of Fiorani's newly submitted 'facts, evidence' by documents that were not then available before February 5, 2013, [U.S. Bankruptcy Court hearing, 2/5/13, 10 a.m] at the time Fiorani filed his appeal.

Thus, this Court's three-judge panel erred by not choosing to reopen and review this clerk's rejected newly obtained facts, documentary evidence, that was provided to Fiorani after February 5, 2013, by the still open and pending Chrysler corporation's filed

Bankruptcy Proceedings, (USBR-SDNY, 09-50002-SMB) on the filed class-action illegal acts and criminal conduct documented and testified to the Bankruptcy Judge Bernstein. Consequently, this Court appeared to ignore the Federal Rules of Civil Procedure, Rule 60, which does allow for and specifically provides that a "'court can reopen, *sua sponte*, a prior issued judgment' to amend, correct or modify a prior judgment on a party's new facts, evidence or documents, that would change the prior outcome of a court's order or judgment.'" United States v. Morgan, 346 U. S. 502 (1954)("Such a motion is a step into the criminal case, and Rule 60(b) of the Federal Rules of Civil Procedure, expressly abolishing the *writ of error coram nobis* in civil cases, is inapplicable. P. 505, n 4.). See also Pierson v. Dormire, 484 F.3d 486, 492 (8th Cir. 2007); Budget Blinds, Inc., v. White, 536 F.3d 244, 254-55 (3rd Cir. 2008). And see, *In re.*, Chrysler Corp. USBC-SDNY, (*09-br-50002-SMB*).

These specific, 'newly obtained' and 'received' facts, evidence and third-party information, relevant to and directly crucial to why this Court must reopen this appeal, because of what happens when a corrupted U.S. District Judge, (T.S. Ellis), EDVA does knowingly and intentionally 'schemes' with the U.S. District Judge, (Jones), MDPA, to unconstitutionally violate Fiorani's Due Process and Equal Protection was also planning to prevent Fiorani from –having his 'day' in court before an unbiased and impartial court in his causes of action against Chrysler-Dodge and some 100 Dodge dealers.(Pltf. Exh. 9; *Id.*, 09-50002-SMB; 12-0416-USDC-MDPA). Thus, this Court must grant Appellant Petitioner's *rehearing or rehearing en banc* on these many facts and documents given to Fiorani after this Court issued its January 17, 2013, Order and Judgment.

District judge Jones, (MDPA), did improperly transfer, adverse to 28 U.S.C. §1391(c) and § 1406, § 1446 to the Eastern District of Virginia. Judge Jones' private knowledge that EDVA' judge T.S. Ellis' was unethical, **corrupt, and he would illegally**[1] continue to violate (18 U.S.C. § 4 and § 1979), Fiorani's Constitutional Rights under his Due Process and Equal Protection of Laws[2]. These facts and new, independent third-party statements have confirmed decades of judicial misconduct committed by Judge Ellis in this case, as well as abusing his judicial duties, responsibility by obstructing justice under Federal Criminal Code, 18 U.S.C. § 4 and § 1979, as asserted in Fiorani's July 11, 2013 Appeal 13-4333, (USDC-SDNY 2013), Fiorani v. Hewlett Packard, Et al., 13-2444 (3rd Cir. 2013).

-1-

## NEWLY OBTAINED FACTS, EVIDENCE AND 3RD PARTY INFORMATION

---

[1]. In enacting 18 U.S.C. § 1979, Congress intended to give a remedy to parties deprived of their constitutional rights, privileges and immunities by official's [judges] who abused his powers, authority, and judicial position. 365 U.S. 171-187. (a) The statutory words "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" do[es] not exclude acts of an official, [Judge] or the policeman who can show no authority under state law, custom or usage to do what he did, or even who violated the Constitution and laws. 365 U.S. 172-187.

[2]. (b). One of the purposes of this legislation was to afford a Federal right in Federal courts because, by reason of prejudice, passion, neglect, intolerance, or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies. 365 U.S. 174-180.

(c). The Federal remedy is supplementary to the state remedy, and the state remedy need not be sought and refused before a Federal remedy is invoked. 365 U.S. 183.

(d). Misuse of power possessed by virtue of State law and made possible because a wrong-doer is clothed with authority of State law is action taken "under color of" laws within the meaning of § 1979. United States v. Classic, 313 U.S. 299; and Screws v. United States, 325 U.S. 91; and 365 U.S. 183-187.

A.  NEW FACTS AND INFORMATION GOTTEN AFTER JAN. 17 APPEAL.

This prior three-judge panel erred denying and rejecting Appellant Fiorani's new facts and evidence, (exhibit documents) gotten from the Bankruptcy Court, Southern District of New York, (SDNY), February 5, 2013. Chrysler Bankruptcy Hearing, (09-50002-SMB). That hearing revealed new facts not known of, about, and that was not available before January 17, 2013, under the 2009 Bankruptcy Act, Codes or Rules and the Fed.R.Civ.P. Rules 55, 60(a), (b) or ©[3], and 64 which were not raised by Appellant Fiorani until after the Bankruptcy Court's January 3, 2013 issued Order to appear and present facts and evidence against the debtor(s) Chrysler, (Dodge, et al) on Dodge's nearly four-years of engaging in criminal, civil, banking, and the State's DMV violations encountered over those four years. (2009-2013).

"Plaintiff Fiorani', (Appellant) was not then aware of, before January 17, 2013, that pursuant to Rules 55 and 60, does provide a court to *sua sponte* make changes to, modifications of, or corrections of a judgment on new, relevant facts or crucial evidence not obtained prior to issuance of a judgment or order." Moreover, Fiorani and this Court was not aware that a prior known corrupt Federal district judges Jones and Ellis would unconstitutionally get to transfer a civil case from the MDPA, after February 2013 to the EDVA, where this Circuit's Order(s) and decision would never be complied with and not

---

[3]. Rule 60(a), (b) and (c). **Relief from Judgment or Order**, Fed.R.Civ.P., 2013 Ed., (a) "'**Corrections Based on Clerical Mistakes; Oversights and Omissions.**" The court may correct a...mistake arising from an oversight or omission whenever one is found in a judgment, order, or other parts of the record...But after an appeal has been docketed in an appellate court; and...such mistake or omissions may be corrected only with the appellate court's leave." 60(b)(1), (2), to (6) provides "any other reasons that justify relief." 60(c) **Timing and Effect** of the Motion. "A motion under Rule 60(b) must be made within a reasonable time—no more than a year after entry of the judgment or order or date of the proceeding."

be filed in that EDVA court by that known corrupted judge Ellis, five (5) months after the improper transfer from that proper district in the State of Pennsylvania, near Malvant, PA. under § 1391(b)(2). Once it was received in the clerk's office of the EDVA, Fiorani would not be sent a required notification and no defendants (Chrysler-Dodge) were ever served pursuant to this Circuit's GRANT OF IFP, under § 1915(a)(1). Fiorani did only learn of the corrupted district judge Ellis', EDVA, closing of the case once arriving that is to be filed in that EDVA. Pursuant to Rule 60(b)(3), "Fraud on the court", and (6) "any other relief that can be reasonably justified," –to balance the principles of the interest of the court in seeing justice is done in light of any new facts, evidence, documents presented by the moving party. Hesling v. CSX Transp., Inc., 396 F.3d 632, 638 (5th Cir. 2005). But, would had been admissible if it were known, was not in Plaintiff's possession before the filing of an Appeal. The third-party information must provide this Circuit court with *sua sponte* jurisdiction that would overrule or supercede, "[t]his Court's general jurisdiction over 'final decisions' of [a]/the district court, Title 28 U.S.C. § 1291.

Generally, all Rule 60 motions must be made 'within a reasonable time." Fed. R. Civ.P. 60(c)(1). Reasonableness can vary based on the grounds for seeking relief. The *motion seeking relief under Rule 60(b)(2) for changed circumstances presents another interesting situation. If a specific and fixed event causes the change in circumstances– e.g., a new Statute changes the law or a Supreme Court case makes a clear departure of the law–* then that should send a clear signal to parties about a need to promptly seek relief on that basis. A party may seek to vacate or modify a judgment based on evidence in existence at the time of the Appeal, but not discovered under afterwards. Fantasyland Video, Inc. v. County of San Diego, 505 F.3d 996, 1005 (9th Cir. 2007);

General Universal Systems, Inc. v. Lee, 379 F.3d 131, 158 (5th Cir. 2004).

Appellant submits excerpted parts from his 'Bankruptcy Court Order' that the court required 'Fiorani' to submit information to the court for the upcoming February 5, 2013 hearing. On these reasons, this Court must reapply Rules 60 and 64, by reopening and revising and modifying its decision to: (1) Reorder the MDPA, J. Jones to recall his unethical and unconstitutional transfer of Fiorani's case to the EDVA, Alexandria Division. (2) Issue a Federal Order, Rules 64 and 55, to the [either] USDC-EDVA or USDC-MDPA, to seize from a(ny) Dodge dealer in Pennsylvania or Virginia to turn over to Marshals and State Police, on behalf of Fiorani, on the judgments under Rule 55 for defendants' default judgment pursuant to the clear language of Congress' intentions when enacting those Statutes, Rules 55, entering a default judgment and 64, ordering a district court to seize, gather, and collect from the defendants, amounts as stated in the original Complaint, 12-cv-0416-MDPA, ($1,525,000.00, plus punitive and restitutional damages.) [Excerpts of Pltf. Fiorani's Memo to the Bankr. Court, Jan. 13, 2013.]

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

In February 2009, FTC's Director of Consumer Protection and its other divisions Directors, in cooperation with the enacted new Presidential Appointed 'Director' of the Consumer Protection Financial Bureau opened up to the country a specific intent of bringing all car manufacturers under a specific Federal agency that would regulate and implement on a national scale, thereby holding around the country, "Roundtables"[1] so that all State's Attorneys Generals, consumers, DMV agencies, the Federal Reserve, Banking, along with various law enforcement agencies to hear direct testimony from1. FTC initiated its first of three Roundtables in or about April 2009. After two years, in April 2011, FTC opened up a combined consumer protection, marketing, banking, advertising, and joint investigation(s) with Consumer Financial Protection Bureau's Finance Regulator on dozens of named Dodge dealers' proven combined criminal acts and lending discriminations against all consumer-borrowers. Eventually, it was learned that Ally, GMAC, and TD Bank were engaging in with Dodge's nearly 100-dealers, over 40-months.

Page 2 of 10

> Thereby, the Federal Government's agency acted in cooperation with many State DMV agencies to be able to establish specific liabilities to car manufacturers' [agents] dealers, showing that each had engaged in their illegal acts that were being committed, with the approval, condonation, and disregard to and for the thousands of consumers, borrowers trying to buy cars, trucks, boats, and RVs. (Defs. Obj P. 3, ¶¶ 3-4);

See Pltf's. Exhs. 1-(9)-27).

> Between 2010-2012, (New Chrysler LLC), was served in the two civil suits filed in the United States District Court, Middle District of Pennsylvania, (Harrisburg District). The CEO and President did not answer, reply, or appeared. Rule 55(a) and (b). (Civ. 12-0416 USDC-MDPA.).
>
> In August 2011, FTC re-initiated its criminal investigations against Dodge dealers under its case number, g FTC issued its **MDCI (Multi-District Criminal Investigation case no.: 39426874) on August 10, 2012. See Appx. Exhs. 9, 22, 23, and 24.**
>
> Fiorani demonstrated to FTC his about thousands of pages of notes, reports, statements from Dodge managers, salesmen, and from Dodge's PA. Business Office's Regional Manager. After 30-months of Fiorani's investigations, Fiorani proved to FTC that his repeated calls to Dodge Corp., many sent email to Dodge's email system; **and several CERTIFIED U.S. MAIL were accepted by Old CARCO's CEO.** Thus, a default judgment, Rule 55 and 64 should be filed in the Clerk's Office after Chrysler LLC Corp., repeatedly failed, refused, and illegally disregarded to answer or appear in Federal Court pursuant to Fed.R.Civ.P. Rules 4, 55 and 64. **MDCI (Multi-District Criminal Investigation case no.: 39426874) on August 10, 2012. See Appx. Exhs. 9, 22, 23, and 24.**

Page 3 of 10

To be entitled to relief under Rule 60(b)(2), a party must show that the evidence "(1) is newly discovered; (2) was not available at the time of [*Appeal*] despite exercise of due diligence; (3) is material to the claims; and, (5) if introduced in the [*filed Appeal*], it would produce a different (*changed judicial*) Ordered result." Venture Industries Corp. v. Autoliv ASP, Inc., 457 F.3d 1322, 1328 (Fed. Cir. 2006) ("movant must show "that the evidence is material and controlling and clearly would produce different results when presented to an original [*three-judge's*] judgment."). Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 433 (1st Cir. 2005); Hesling v. CSX Transp. Inc. 396 F.3d 632, 639 (5th Cir.

2005).

–2–

## REASONS THIS CIRCUIT MUST GRANT REHEARING, REHEARING *EN BANC*.

Appellant, Ross A. Fiorani, (Plaintiffs, *Et. Al.*), requests this Appeals Court re open this case on new facts and another Court's superior jurisdiction over this case which must reverse or vacate the apparent implied improper transfer of this case to the United States District Court for the Eastern District of Virginia, Alexandria, that was unethically ruled on and unconstitutionally dismissed[4] by several corrupt District judge Ellis and judge Buchanan (10-cv-0880-TSE), shown in the 2010 memoranda and R & R which this Court held was reversible error when intentionally committed by a District judge in the Middle District of Pennsylvania, Harrisburg, (12-cv-0416); which was also equally reversible error was it that the Fourth Circuit Court not ignored and consented to allowing a corrupt[ed] judge to abuse his position and to intentionally violate a plaintiff's civil right to represent himself to 'expose' a nationwide wrong against him or thousands of others equally. Titles 18 U.S.C. § 4 and § 1979 prohibit [Federal] district judges from conducting themselves in a way that is adverse to the second part of § 4 at n. 4.

*It is on these new circumstantial facts and the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York, Manhattan District, that this Circuit Court must amend its prior ruling that allows the U.S. District Court for the*

---

[4]. "... 'destroy[s] the appearances of neutrality'"); ("[t]his principle [of government neutrality [] applies with ever greater force to the judicial branch because judges are sworn to be neutral arbiters and must apply the law even-handedly without letting their biases, prejudices and personal feelings enter into their decisions [maliciously stated against a party in the case]"). *In re.: Bakker*, (4th Cir. 1991); North Carolina Civil Liberties Union Legal Found. v. Constangy, 947 F.2d 1145, 1150-52 (4th Cir. 1991).

Middle District of Pennsylvania, Harrisburg, to transfer this case that has more far reaching consequences for the debtor, Old Carco, LLC, and its prior Dodge dealerships before 2009, and for New Chrysler Group, LLC, and the about 80-Dodge dealerships that are operating in those specific 15-States from in or after 2008 to 2013. Pursuant to the Federal Rules of Jurisdiction, 28 U.S.C. §§ 1331, 1332, and the Federal Bankruptcy Code, Rules, and Regulations under Chapter 11, this Court must now reconsider its previous decision and entry of its judgment, ('decision' or 'judgment') entered January 17, 2013.

Appellant requests this Court amend its previous January 17, 2013 Order after re-reviewing those Exhibits of Plaintiff's, (Appx. 1-26), submitted to this Court that specifically gave rise to those new facts[5] exposing District Judges Jones, Ellis, Mannion and Buchanan had intentionally violated Plaintiff's Constitutional Rights require this Circuit Court, pursuant to Federal Rules of Civil Procedure Rule 60 to correct 'errors' that were made by a superior court, pursuant to sections of Rule 60, and 55 and 64. Those Rules provide with the Exhibits, 9 and 24, (Appx. 1-27), does vividly display and demonstrates examples of –intended judicial misconduct under §§ 4 and 1979, by their own written orders confirming district judge Ellis in the EDVA had been 'bribed by one of those Dodge Business Centers in Maryland or Pennsylvania.

Judge Ellis was a party in an opened case of judicial criminal conduct that plays

---

[5]. Appendices 1-27, specifically Appendix 9, (Email dated Dec. 14, 2011, Len Stoler Dodge), clearly stated Chrysler ordered its business offices to notify all its area Dodge dealers to –by various acts and conduct, thereby, engaging in banking, civil and a criminal conspiracy pursuant to Title 18 U.S.C. §§ 371 and 1961, *et seq.*. See lon Management, S.A., v. United States, 545 F.3d 525 (2nd Cir. 2009).

a part in keeping wrongful and unconstitutional criminal convictions from being reversed but kept concealed from any 4th Circuit reversals. He handled a civil case in 1999, that he was paid a bribe by a civil defendant, Crystal Ford, a dealer in a Federal Trade Commission investigation for numerous violations of the 'Maroney sticker' required on new and used cars. That case also has district court transcripts showing Judge Ellis ignored and concealed two Attorneys, officers of the court, to commit perjury by making false representations to the court and failing to comply with Judge Ellis' signed order for them to appear before him on January 29, 1999. (USDC-EDVA., Tr. 1/29/99). § 455(a).

Accordingly, corrupted judges are very prevalent in that district court over more than 20-years, (1990-2013). Judge Ellis' written 2010 order to dismiss and to continue to illegally block, hinder and to intentionally abuse his position and oath of office. ABA Mod. R. Jud. Cond., R. 1.2, 2.6(B) (2011 Ed.). The Code of Conduct for United States Judges is in Canon 1, 3A(4) (2011) still do apply to all acts and conduct initiated by any of these named, district judges, T.S. Ellis and J. Jones, on each of their written orders that have intentionally violated Canon 3A(4), and 18 U.S.C. § 4 and § 1979. (This Appl, n. 1-4). Those Federal agencies and 15 States' Attorney Generals had received several independent statements from several Dodge dealers in Maryland and Virginia, which gave rise to those Federal agencies and States Attorney Generals' offices to thereafter, subsequently open up their State's own separate or combined criminal, banking and civil investigations led by the FTC[6] and CFPB.

---

[6]. Plaintiff's Exhibits, (Appendices 9 and 23). December 14, 2011, and November 2010, from a 2009 FTC opened investigation of all car manufacturers' operations that had given unregulated conduct to its dealerships that are not regulated before 2009, and as of yet, still are not being regulated by any Federal and State agencies, until the enactment of a new Federal

—3—

**DEFENDANTS HAVE CONTINUED TO DISREGARD AND
REPEATEDLY FAILED TO ANSWER UNDER R. 55.**

Wherefore, Appellant respectfully requests this Court review now all previously stated facts, claims, and attached Appendices submitted with those dozen documents, (Appx. 1-27). Many of those exhibits clearly raise definitive proof of Chrysler's, Dodge's business offices intended to commit criminal conspiracy among many other criminal acts, adverse to Federal Bankruptcy Rules, Codes and Procedures as amended in 2005.

Under those Rules, Codes, and Procedures, Plaintiff/Appellant has exposed the many past criminal' acts initiated by those 100-dealers misconduct committed by about 60 of 100 dealers in those 15 States, inside the Federal District Court in Pennsylvania, § 1391(b) and (c). Fiorani's case must be transferred from EDVA and remanded to the EDPA or SDNY so the Bankruptcy court can have exclusive jurisdiction and authority of a prosecution of Dodge, under Chapter 11 of the Bankruptcy Act, Rules and Codes as Congress established for Chrysler's filed bankruptcy on April 30, 2009. Section 1391(c) of the Federal Rules of Civil Procedure Rule 60 which now requires this Court to correct the unconstitutional and improper transfer of the civil case, 12-cv-0416 to the EDVA, by the district judge, MDPA, where the primary acts originated by Chrysler's criminal acts in Pennsylvania by the Dodge Regional Business Office is an agent of Chrysler.

Those 80 Dodge dealers then engaged in their own separate criminal conspiracy retaliation, banking and lending discriminations jointly with TD Bank, Ally Bank and

---

Agency, CFPB under the authority of Ms. Elizabeth Warren, (now Senator Warren), 2010-2013.

Page 12 of 15

GMAC before, in and after 2009-2012. See, e.g., USBC-SDNY, (09-50002-SMB), hearing transcripts. See www.epiq.com. It was those collection of information that was testified to on February 5, in that hearing to the Bankruptcy Court in New York showing the Bankruptcy Judge of all acts and misconduct committed by Dodge's dealers after being ordered by Chrysler in 2009, to 2013. Indeed, Judge Ellis was said by several of those Maryland and Virginia Dodge dealerships had criminally taken bribes from Dodge Corp. Business Office in Malvant, Pennsylvania and Beltsville, Maryland in 2010, where the factual events occurred; Not in Virginia, as Judge Jones implied. § 4 and § 1979.

It is for these reasons and grounds that this Court must re-review and modify its ruling still in-favor of Appellant. Issue an order to the district court in Harrisburg, PA., under the Federal Rules of Civil Procedure Rule 1407 or 1441 that ignored and failed to comply with the Bankruptcy Court's supervisory authority and jurisdiction over this case, pursuant to Chapter 11 of the Bankruptcy Code. District judges Jones and Ellis were aware of or should had been knowledgeable that within the civil complaint, Plaintiffs did reference more than once, criminal, civil, banking, DMV and other Federal crimes under RICO's conspiracy section because those crimes of whatever nature were committed by defendants, across State lines where not one specific district court in Pennsylvania has exclusive jurisdiction that was improperly given to Judge Jones, (MDPA). He then improperly transferred the case, contrary to 28 U.S.C. § 1391, § 1406 and § 1441.

Fiorani's *In Forma Pauperis*, (*IFP*), prohibits any district courts from taking having exclusive authority or jurisdiction over the plaintiff's *IFP* must have been prevented by the 4th Circuit's proper review which was never possible in this Circuit Court's granting Fiorani's 2010 *IFP*. This Court has not revoked that Grant of IFP, which was apparently

Page 13 of 15

ignored by the District courts in Virginia and Pennsylvania. Both district courts ignored the superior ruling and authority that Appellate Courts have over its district court judges.

This Court had appeared to ignore very relevant, crucial exhibits of Fiorani's. See. [Appx. 9, (email, Dec. 14, 2011)] reveals Chrysler's business office, USBC-SDNY, 09-50002-AJG), was is the defendant under Agency Law, on its business office being in Malvern, PA., under 28 U.S.C. § 1391. Any transfer of Fiorani's civil cases outside the State of Pennsylvania's Federal Courts are contrary to the intent of Congress' when enacted in § 1332(d)(11)(C).

Moreover, Congress clearly intended for all Federal Courts to issue pretrial or pre--judgments against defendants pursuant to Federal Rules of Civil Procedure's Rules 55 and 64, *inter alia*, "[a] Plaintiff or district court clerk is to promptly send to a defendant a copy of the complaint . . . filed with the court as a beginning of a civil case." This Circuit did not consider the past two years, (2010-2012), of Appellant's crucial exhibits, [Appx. Exh. 9].[7] The district court does not have jurisdiction or authority under a MDL Court's statutory jurisdiction does require this case be filed under 28 U.S.C. § 1406 and § 1441.

—4—

## LAWS OF AGENCY, TORTS, AND DAMAGES

Between, in or after February 2009 to this present date, (2013), Plaintiff Fiorani, (Appellant) was approved by Chrysler Corp., Chrysler Financial, and his then employer, to be sold a new, (current year) Dodge Charger. (USBC-SDNY, 09-50002-SMB, Tr.,

---

[7]. Chrysler's Dodge Regional Business Office, 100 Lindenwood Drive, Suite 302, Malvern, Pennsylvania, was existing before, in, and supposedly after 2011, at the time of Chrysler's Executives, Directors, Business Managers, and General Managers of those dealers' having engaged in their criminal conspiracy and retaliations of consumer, buyer Fiorani, Et. al..

2/5/13). On December 14, 2011, an email was sent to Fiorani <u>before his arrival to the Dodge dealership, Westminster, MD., (Len Stoler Dodge), informing him not to come to the dealership. (Ptlf. Exh. 9; 09-50002-SMB, Tr.).</u> This three-judge panel appeared to err in failing to strongly, but separately, consider that very crucial piece of evidence that does directly link under Torts, Agency, Criminal Law, and Damages[8] that Chrysler's acts were a direct order and specific instructions to its agents, Regional Dodge Business Offices in Pennsylvania and Maryland, to engage in a criminal conspiracy with nearly 100 dodge dealers operating in 15-States. (USBC-SDNY, 09-50002-SMB, 2/5/13, Tr.) where that bankruptcy court had taken serious notice of Fiorani's exhibit 9, presented to that court. Fiorani was also able to demonstrate and establish that there was a planned pattern of and criminal practice of violating each of those dealers' State's and Federal laws. (Title 18 U.S.C. §§ 4, 371, 1512, §§ 1961, 1961(c) and § 1979).

Furthermore, we refuse to adopt the suggestion that the prosecution, in order to establish vicarious liability, should have to prove as a separate element in its case-in-chief that the corporation lacked effective policies and procedures to deter and detect criminal actions by its employees. We note that this argument is made only by *amici curiae* and not by Ionia, and so we are not obligated to consider it. But the argument, whoever made it, is unavailing. Adding such an element is contrary to the precedent of

---

[8]. <u>United States v. Ionia Management, Inc.</u>, 555 F.3d 303 (2d Cir. 2009)(We find that Ionia's claim that there was not sufficient evidence to convict it on a respondeat superior theory to be meritless. The Court reviews challenges to the sufficiency of the evidence de novo, <u>United States v. Yannotti</u>, 541 F.3d 112, 120 (2d Cir.2008), affirming if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

our Circuit on this issue. See Twentieth Century Fox Film Corp., 882 F.2d at 660, (hold -ing that a compliance program, "however extensive, does not immunize the corporation from liability when its employees, acting within the scope of their authority, fail to comply with the law"). This remains so regardless of asserted new Supreme Court cases in other areas of the law. As the district court instructed the jury here, a corporate compliance program may be relevant to whether an employee was acting in the scope of his employment, but it is not a separate element.

## CONCLUSION

Accordingly, for these reasons and on these newly received facts and third-party information that was provided after this Court had entered judgment and Order vacating and reversing the district court's improper denial and dismissal of Plaintiff's complaint in 2012. Appellant respectfully requests that this Court reopen, under § 1391 and Rules 55, 60, and 64, directing the criminal activities of district judge T.S. Ellis, EDVA to have the transfer of case 12-cv-0416 back to the District Court, Eastern District of PA, so that Fiorani's civil causes of action can be promptly heard on his more than 30-exhibits that are available and presented to an impartial judge, unbiased and unprejudicial court, and to a proper and fair conclusion under the Laws.

Ross A. Fiorani, *Et. al.*,
Appellant, Pro-Se and Plaintiffs
7115 Latour Court,
Kingstowne, VA. 22315
(703) 719-0272
(703) 822-1879
valegal53@gmail.com