

FILED
MAILROOM

SEP - 6 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MANHATTAN DIVISION

```
================================ :
    ROSS A. FIORANI, Et. al.           :
    7115 Latour Court                  :
    Kingstowne, VA.  22315             :
        Plaintiff, Appellants, Pro-Se :
                                       :
    v.                                 :
                                       :
    Dodge, Chrysler et al.,            :
    In re., Old Carco, LLC., and       :
        CHRYSLER GROUP, LLC.           :
    3000 Chrysler Drive                :
    Auburn Hills, MI.  48321           :
        Defendants, Appellees          :
================================ :
```

*and Case # 13 CV 346 AJT*

Case no.,   __13-br-04333__

## DECLARATORY JUDGMENT AND ORDER TO STATE DMV/MVA REQUIRING STATE OFFICIALS TO PAY PLAINTIFF, COMPLYING WITH § 46.2-1500 AGAINST DEFENDANTS UNDER RULES 54, 55 AND 64 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### I.   INTRODUCTION

Plaintiff Fiorani, ("Plaintiff" or "Fiorani"), and about 15 States Attorney Generals[1],

("15-SAGs" or "SAG"), filed in or about February 2010, and again in April 2012, with the

United States District Court, Middle District of Pennsylvania, (USDC-MDPA) Harrisburg,

(12-cv-0416), after a Maryland Dodge dealer, Len Stoler Dodge, ("Len Stoler"), sent to

Fiorani, on December 14, 2011, an email telling him, 'Chrysler had told all its Business

---

[1].  Michigan, Pennsylvania, Maryland, Ohio, West Virginia, Virginia, Delaware, New Jersey, New York, Kentucky, Tennessee, North Carolina, Georgia, Texas, and Florida, to date.

Offices, (two located in Malvern[2], PA., and Beltsville, MD.), directing and ordering their Dodge regions Business Offices, (Pltf. Exh. 9) not sell and deliver to Fiorani a car [a replacement] because he was a classaction-plaintiff in the May 1, 2009, class lawsuits filed against Chrysler, "Consumers-Victims of Chrysler", by several New York lawfirms demanding financial, compensatory, general and punitive damages on behalf of victims of Dodge-Chrysler after it had filed bankruptcy. (09-br-50002-AJG, USBC-SDNY, 2009).

Plaintiff brings this action for, *inter alia*, declaratory judgment relief and a default judgments, [Fed.R.Civ.P. R.54(c), 55(a) and 64(a) and (b). Thereby, pursuant to those Federal Rules, this Court must Order the Chrysler Group, LLC. and Old Carco, LLC., jointly and severally, to comply FORTHWITH, under this Court's Orders after nearly five years of Dodge's 80-Defendant's repeatedly failed to answer, refused to respond and comply with service of process on those Three (3) filed Complaints and services by the Third Circuit clerks on two separate appeals. Fiorani did each time, complied with Rule 4, when those Complaints and Summons on Chrysler by certified mail, UPS, and FedEx services. Too, the Third Circuit issued its Order to Chrysler-Dodge to file its answer and appeal to Fiorani's Appeal(s) within 14 days, or before August 1, 2013, Rules 4, 54(c), 55(a) and 64(a) and (b). Scala v. Moore McCormick Lines, Inc., 985 F.2d 680, 683 (2nd Cir. 1993) ("A $2 Million Dollar verdict is not invalid just because Plaintiff had only demanded $500,000.") See also, RK Co. v. See, 622 F.3d 846, 853 (7th Cir. 2010).

## II.   JURISDICTION

---

[2]. (Pltf. Exh. 29), Dodge's Pennsylvania Business Office that sent out and engaged in-concert, their conspiracy, (18 U.S.C. § 371), and pursuant to 28 U.S.C. § 1391(c), with about 80 dealers operating in those 15 States in, on, and after May 1, 2009 to August 15, 2013.

Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1291, § 1343, §§ 1367, 1391, and § 2201, § 2202. And this Court has appellate jurisdiction under the Title 11 U.S.C. of the Bankruptcy Codes, Laws, Rules and Procedures, amended in BAPCPA of 2005 as enacted by Congress.

### III.    EXTRAORDINARY RELIEF IS REQUIRED.

Federal Rules of Civil Procedure 54(c), *DEMAND FOR JUDGMENT RELIEF BE GRANTED,* is that this Court must grant Plaintiff's all the relief he is entitled to, even if it is not specifically requested in the Complaint. Regional Air, Inc. v. Canal Ins. Co., 639 F.3d 1229, 1234 (10th Cir. 2011)("as a matter of law, the district courts judgment must grant relief, –no more, no less,— the court has determined the Plaintiff is entitled to."). This Court can grant injunctive, declaratory relief to Plaintiff Fiorani as fully appropriate when the Plaintiff did previously request it; Rule 54(c), "was meant to protect a Plaintiff, . . . which through [] oversight, or by 18 U.S.C. § 4 or § 1979, would deprive a Plaintiff of his entitled and deserved relief and recovery from the defendant."). USX Corp. v. Burnhart, 395 F.3d 161, 165 (3rd Cir. 2004). See also, Chicago United Industries, Ltd., v. City of Chicago, 445 F.3d 940, 948 (7th Cir. 2006).

In 2010, Plaintiff Fiorani filed his first Complaint seeking relief from the United States District Court, Middle District of Pennsylvania, Harrisburg District. Plaintiff sent a copy of that complaint to Chrysler's Michigan Office, required by Rule 4 of the Federal Rules of Civil Procedure. After more than 30-days, to this present date, four (4) years later, no defendants have ever replied, appeared, and never filed an answer to the filed Complaint. City of N.Y. v. Mickalis Pawn Shop, 645 F.3d 114 (2nd Cir. 2011); Symantec Corp. v. Global Impact, Inc., 559 F.3d 922 (9th Cir. 2009)(default judgment doesn't

create an appealable order.) New York v. Green, 420 F.3d 99 (2nd Cir. 2005).  Fed.R.

Civ.P. 55(b) and 55(b)(2).

Whenever a defendant fails to respond, under R. 55, "is the failure to timely reply

and appear to defend." Defendants are required to answer the complaint. *Failing to*

*timely reply* on a properly served and filed complaint, prevents a defendant from

preventing entry of a default judgment.  Harrison v. Bornn, Bornn & Hardy, 200 F.R.D.

509 (D.V.I. 2001).  See Jackson v. Innovative Securities Services, Ltd., 283 F.R.D. 13,

(D.D.C. 2012) ([d]efendant never replied, answered complaint after its motion is denied,

allows a default judgment to be entered for Plaintiff).

Plaintiff Fiorani has no other adequately plain, speedy and equitable [forthwith]

relief, and no immediately apparent type of judicial remedies at law, since defendants

have made it very clear their intended common illegal practices, plans and schemes are

to continue to disregard Federal Court orders, especially after more than four years.

Plaintiff has attempted to get and receive legal judicial remedies through the courts as

he is Constitutionally allowed to do under the Equal Protection of Laws, and Due

Process that was prevented, deprived, and ignored by at least four district judges over

these four years, under the 14th Amendment.

## IV.   DECLARATORY JUDGMENT AND DEFAULT JUDGMENT UNDER RULES 54, 55, AND 64 REQUIRE COURT'S IMMEDIATE ACTION.

1.   Defendants, Chrysler and Dodge are corporations organized under the laws of Michigan, with its principal business offices located in Pennsylvania, Maryland, and Florida, for the purposes of this Declaratory Judgment.  Chrysler is authorized to build and deliver cars to all its dealerships located in all 50 States of the United States.  And, all those dealerships are agents of and representatives of Chrysler-Dodge Group, LLC., or Old Carco, LLC., pursuant to Title 11 U.S.C. of the Bankruptcy Code.

2. Various persons of Chrysler-Dodge consist of: managers, dealers, general managers, sales managers and finance managers, each who was not known by specific name, but are defendants, under the Federal Codes cited in those two Federal suits. Each dealership has still, had, have, and are active participants in the ongoing criminal conspiracy, acting as co-conspirators in direct and indirect violations specified in the complaints. Each named dealer was having performed many illegal acts or numerous criminal conduct when committing acts in furtherance of Chrysler-Dodge's intended schemes, plans and its businesses, contrary to all Federal and State's laws.

3. Chrysler-Dodge dealers engage in commerce both interstate or intrastate when manufacturing, selling, and distributing all its products pursuant to the Sherman Antitrust and Clayton Antitrust Acts, § 1 of the Sherman Act.

4. For at least four (4) years, between 2009 to 2013, defendant dealers and Chrysler-Dodge Corporations were engaging in-concert with each other as co-conspirators, having been acting contrary to various Federal and State laws, as defined by Federal [criminal] laws 18 U.S.C. § 371 and § 1961, § 1962, and § 1512, which includes defendant dealers' criminal retaliations and telephone harassment of Plaintiff, adverse to 18 U.S.C. § 4, whereby none of those Federal district judges, Ellis, Jones, Buchanan and Mannion has intended to violate its judicial oaths of office and obstructed justice by their collected years of bribery, corruption, and accepted property from which each Judge failed and refused to fairly or impartially do his job.

5. Defendants' acts and misconduct were in combination of a conspiracy has consisted of a continuing criminal understanding, in-concert with actions among more 80 dealers will continue their combined criminal acts until the Court enters its Order to enjoin and stop Chrysler-Dodge from engaging in its criminal act of conspiracy, violations of Antitrust, and violations of RICO jointly violating each State's own criminal, DMV codes, lending, and other civil law that provides compensation and treble damages against each dealer and Chrysler-Dodge Group in the amounts of $250,000.00 each dealer and pursuant to RICO Act, 18 U.S.C. § 1961, 1962(c) and 1964(c), which violations are included under Virginia's DMV codes § 46.2-1500.

6. Defendants, dealers and Chrysler Group, or Old Carco, LLC., acted and conducted criminal acts against Federal credit, banking, and lending laws, while also acting in-furtherance and in-concert with each other and those banks to evaluate and determine many excuses or illegal reasons to tell or misrepresent to Fiorani, why that dealer will not sell nor deliver to him any of his choices of replacement cars, adverse to FCRA 15 U.S.C. § 1681.

7.    Defendants were in combination with each other when engaging in their criminal conspiracy. Each dealer has had the following adverse, harmful and emotional aspects by exasperating the effects on Plaintiff's health, and its foreseeable damages to Plaintiff's A1C readings and excessive blood-pressure readings, with other related detrimental health problems incurred and also suffered by Fiorani over more than four-years, to date, on specific causes resulting from each defendant dealer and Chrysler-Dodge's discovered email on December 14, 2011.

8.    As a direct or indirect result of defendants combination and conspiracies and of those various other criminal acts done in-concert in pursuance by each named defendant, dealers, and others, in the power and influence of defendants, named dealers, have been greatly increased, exacerbated, and intensified by each dealers' acts in cooperation with Chrysler-Dodge to continue to engage in their criminal conspiracy to cause all resulted pain, suffering, humiliation, defamation, while inflicting personal health damages to Fiorani spanning those more than four years, to date.

9.    Upon a collection of information from sales persons, not managers and/or director of the dealership, and on Plaintiff's factual belief and investigation of each of some 100 dealers on defendants' criminal conduct, Dodge's defendant dealers were in restraint of trade and each did constitute a monopoly and were and are an attempt to create a monopoly against the Plaintiff by refusing to sell, disregarding and ignoring their Franchise Agreements, which is totally regulated by each State's DMV codes.

10.   By reasons of the above-cited and foregoing, Plaintiff Fiorani has been severely damaged, personally harmed, intentionally injured and financially damaged to the amounts of, under RICO, Criminal Conspiracy, Antitrust, and many other Federal crimes and State crimes that provides for or allows this Court to issue its Order for declaratory [default judgments] in favor of Plaintiff Fiorani and each State's AGs, in a total amount of general, compensatory, special, restitutionary and punitive damages, of $1,600,000.00, jointly or severally, against each defendant dealership and Chrysler-Dodge Group, LLC..

11.   Federal Rules of Civil Procedure Rules 55 and 64 specifically allow for and provides this Court with Congress' intended meaning for (Fiorani) the Plaintiff to have a court issue an Order, served on each defendant, dealer, and against Chrysler-Dodge Group, to have any or all assets seized by U.S. Marshals and transfer to and conveying to Plaintiff Fiorani, FORTH-WITH, of all property and financial assets due and owing to Fiorani after four-years of suffering damages due to losses and personal injuries to his body and health over those same four-years.

## V.  PLAINTIFF ENTITLED TO CIVIL LIABILITY UNDER RICO

The RICO statute makes provisions for the recovery of economic losses caused by a violation of § 1962.  That Act provides in this regard, that "[a]ny person injured in his business or property by reasons of a violation of § 1962 . . . may sue therefore in any appropriate United States District Court and shall recover three-times the damages he sustained and the costs of the suite, including a reasonable attorneys fee." 18 U.S.C § 1964(c). The U.S. Supreme Court said in Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) that "the Plaintiff only has standing if, and can recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  The Plaintiff Fiorani's civil cause(s) of action is available to him in these civil cases, 2010 to 2012, because Fiorani has been extremely damaged on Exhibits 1, 9 to 30, that he has been intentionally harmed, deliberately injured and that each dealer has illegally, by its malicious intent, pursuant to RICO's sections over these nearly five (5) years, by and through Chrysler's initiated 2009 planned pattern and schemes before, during, and after its filed bankruptcy, to continue to retaliate against Fiorani, specifically, and more than 200,000 others as listed in the filed May 1 classaction suit against Chrysler-Dodge.

Plaintiff has been able to also show from his massive boxes of evidence that Dodge conspired with its nearly 100 dealers to fraudulently represent, willfully violate Fiorani's ability to obtain his needed property under Virginia codes § 18.2-499-500, that also provides Fiorani with treble damages on Chrysler-Dodge's illegal conspiracy and RICO violations under 18 U.S.C. § 4, 1961, § 1962(c), and § 1964(c).

A required predicate to the granting of summary judgment against a defendant in a civil cause of action is Plaintiff's substantial claims or allegations that Plaintiff was in-

fact "injured, financially damaged, and that Plaintiff suffered damages to his business or person, property" by reasons of at least one of those substantial RICO violations described under § 1961, § 1962(c). This was made clear by the U.S. Supreme Court in Sedima, when rejecting the prerequisite of the "distinct RICO injury," the Court said that

> "[i]f the defendant engages in a pattern of racketeering activities in a manner forbidden by these provisions [§§ 1962 (a)-(c)], and the racketeering activities injure the Plaintiff . . . the Plaintiff has a claim under § 1964(c)." and there was "no room in the statutory language for an additional, amorphous racketeering injury requirement."

Establishment of an injury-in-fact is a predicate of jurisdictional standing under Article III of the Constitution. Such an injury is an essential element of civil RICO liability. To state a viable claim under RICO, it is necessary to show an economic injury to Plaintiff, in contrast to 'only a personal' injury. In Diaz v. Gates, 420 F.3d 897 (9th Cir. 2005), en banc. (The Ninth Circuit held, "Plaintiff's claims of intentional interference with a contract and interferences with prospective business relations were sufficient to state a civil cause of action under RICO, . . . and he had thereby been unable to secure gainful employment.").

## A. PLAINTIFF'S INJURIES BY REASONS OF RICO VIOLATIONS

RICO's civil liability requires that the injury to Plaintiff's business or property be a cause "by reasons of [a] violations of §1962." Plaintiff met that cause of action required under § 1961, demonstrating Plaintiff's four years of injuries were direct; (Exh. 9), that his injuries were factually caused by Chrysler's order to Dodge's business offices in Pennsylvania and Maryland to commit criminal conspiracies; and Plaintiff's financial damages, injuries are collective business and property losses quantifiable by § 1961 and § 1962(c) as caused by Chrysler criminal conspiracy with 100 dealers named and

identified in each of 15-States referenced in those two civil complaints, never replied to nor answered by any of Chrysler's or Dodge's attorneys within the required Rule 4.

In <u>Holmes</u>, 503 U.S. 258, 268 (1992), the court interpreted the "by reason of" causation provision of § 1964(c) as requiring not only "but for" causation in fact of the Plaintiff's injury but also that the defendant's violations of RICO "was the proximate cause as well." Plaintiff's facts meet the Court's 'reason of causation provision of § 1964(c)', 'but for' causation.

1.  Plaintiff was a party to a sales contract entered into by and between Dodge, Chrysler, Chrysler's Financial arm, and Plaintiff in 2009.

2.  Chrysler filed bankruptcy and as a result of that bankruptcy petition, it had its Dodge dealers covering at least 15-States, amounting to more than 80 dealers to accept and comply with Chrysler to engage in criminal conspiracies with others, against 18 U.S.C. § 371 and § 1961, § 1962(c).

3.  Between December 2011 to August 2013, Plaintiff was able to show facts that Chrysler-Dodge had told several of their Virginia and Pennsylvania dealers that "Fiorani was on a 'hot-list' or 'hit-list' by Dodge when he tried to purchase a replacement work car from a half-dozen named dealers.

4.  Plaintiff Fiorani's allegations and claims against Chrysler, Dodge, and some 80-Dodge dealers in at least 15-States is a direct cause of and the proximate result of Chrysler's in-concert conspiracy, fraud, misrepresenta-tions and retaliations, § 1962(c), initiated by Dodge's business offices in three States: Pennsylvania, Maryland, and Florida.

## B.   PLAINTIFF'S ENTITLEMENT TO RICO LIABILITY

Defendants consequences of being found to had been a direct cause and 'but

for' of Federal and State various laws find defendants are liable for RICO's treble

damages, This Court has jurisdictional ability to issue against Chrysler, Dodge severely

substantial penalties which includes up to twice their gross profits or proceeds derived

from four years of Dodge's continued engagement in criminal activities against Fiorani.

Indeed, Fiorani's specific facts and many exhibits seen by several Federal Courts must

result in this Court granting Plaintiff's relief and Order Chrysler-Dodge's 20-80 dealers

be [guilty] under civil liability to Plaintiff in the amount of treble damages, ($500,000. x 3

+ punitive damages of $1,250,000.00), whereby RICO is also analogous to the Clayton,

Sherman Acts, which Congress relied on in fashioning a damages provision for RICO, §

1961, § 1963(a) and § 1964(c).

Therefore, for these reasons and on these specific facts that Chrysler-Dodge did

not reply to nor answer as is required by Rules 54(c) and 55(b), Plaintiff is entitled to

have this Declaratory Judgment granted and the Order issued to Plaintiff Fiorani with a

copy going to those three States' DMVs to turn over to or compensate Fiorani, FORTH-

WITH, after he has suffered and has been severely damaged in his person, business,

and four years of loss of property, caused by Chrysler in and after May 2009.

## VI.   ARGUMENTS FOR DECLARATORY JUDGMENT AND DEFAULT JUDGMENT.

Before February 2009, to August 24, 2013, Fiorani was forced to go to more than

80 Dodge dealers, ("80-dealers") operating in 15 States on his attempts to buy and take

delivery of a replacement's (year) Charger R/T from a dealer. Over nearly five-years,

(2009-2014), Fiorani has collected written detailed notes on and interviewed more than

about 38 salesmen or women and about 60 rental car clerks which includes from about

a dozen dealers who are currently the primary 28 dealers in Maryland, Pennsylvania,

Virginia, Delaware-New Jersey, and West Virginia, on more than 30-Exhibits submitted

to those Federal Courts in Pennsylvania and New York's Bankruptcy Court, February 5,

2013. Each filed suit was served or alternatively 'mailed' by FedEx, UPS, and sent by

Fiorani and clerks of those courts after filing, pursuant to Fed.R.Civ.P. 4(a)[3].

Chrysler's counsel, (Ms. C. Ball or Mr. J. Elman) and New Chrysler Group, LLC.,

defense counsel did not reply after 2-years, and none ever responded or ever 'bothered

appeared to answer the filed complaints'. (10-cv-0880; 12-cv-0416; and 13-02081 (3rd

Cir. 2013), pursuant to Fed.R.Civ.P., R.55 and Congress' specific language in R.64.

Plaintiff's evidence sets forth *prima facie* proof Chrysler had intentionally ordered

---

[3]. Between 2010-2012, (New Chrysler LLC), was served in the two civil suits filed in the
United States District Court, Middle District of Pennsylvania, (Harrisburg District). The CEO
and President did not answer, reply, or appeared. Rule 55(a) and (b). (Civ. 12-0416 USDC-
MDPA.).

In August 2011, FTC re-initiated its criminal investigations against Dodge dealers
under its case number, g FTC issued its **MDCI (Multi-District Criminal
Investigation case no.: 39426874) on August 10, 2012. See Appx.
Exhs. 9, 22, 23, and 24.**

Fiorani demonstrated to FTC his about thousands of pages of notes, reports,
statements from Dodge managers, salesmen, and from Dodge's PA. Business
Office's Regional Manager. After 30-months of Fiorani's investigations, Fiorani
proved to FTC that his repeated calls to Dodge Corp., many sent email through
Dodge's website's email system, **and several CERTIFIED U.S. MAIL
RECEIPTS were accepted by Old CARCO's CEOs.** Thus, default judgments
are fully appropriate under Rule 55 and seizures under 64 should be filed in the
Clerk's Office after Chrysler LLC, has repeatedly failed, knowingly refused, and
deliberately, and illegally disregarded answering and appearing in Federal Court
under Fed.R.Civ.P. Rules 4 and 55. See **FTC's MDCI (Multi-District Criminal
Investigation case no.: 39426874) on August 10, 2012. See (Appx. Exhs. 9,
22, 23, and 24.)**

Case 1:13-cv-00346-AJT-IDD   Document 22   Filed 09/06/13   Page 12 of 15 PageID# 205

Page 12 of 14

while knowingly planning and directed by Chrysler under the *Respondeant Superior* and

*vicarious liability* when initiated by retaliation in violations of Title 18 U.S.C. §§ 371 and

1512, inflicted against Fiorani and about 200,000 or more class-plaintiffs after May 1.

Chrysler and Dodge have continued to fail to take immediate control over and manage

its' agents, dealers under its Franchise Agreement(s) with each dealer still engaging in

criminal conspiracies and committing dozens of other criminal conduct that consists of

RICO[4] acts, and *inter alia*, fraudulent acts of credit, age and marital status

discrimination, physical threats, malicious telephone threats, misrepresentation,

coercive acts against Fiorani by Lustine Ourisman, Farrish Criswell, Safford, Koons,

DARCARS, Heritage, and dozens of other Dodge dealers spanning more than four (4)

years, in those primary four (4) States, each after Plaintiff Fiorani made legal consumer

complaints under Title 18 U.S.C. §§ 4, 1979[5], § 371 and § 1512, is to protect Fiorani

---

[4]. Corporations can only act through their employees, agents, managers, or directors, or by appointment of its corporate counsel, (e.g., C. Ball, Esq., and J. Elfman, Esq., and New Chrysler attorney(s), 2/5/2013, 09-50002-SMB). (In order to establish a § 1962(c) enterprise, more must be shown that the predicate acts of RICO, resulted from the ordinary functions of corporate's employees. The Third Circuit explained in Brittingham v. Mobil Oil Corp., acting through its advertising agency, had falsely represented its Hefty Trash Bags are being bio-degradable. '. . .ensures that RICO sanctions are directed at the persons who conduct, conducted the racketeering activities, rather than the enterprise through which the activity being conducted.') 943 F.2d at 301, 302 (3rd Cir. 1991).

[5]. (b). One of the purposes of this legislation was to afford a Federal right in Federal Courts because, by reason of prejudice, passion, neglect, intolerance, or otherwise, state laws might not be enforced and all those claims of citizens to their enjoyment of rights, privileges and immunities, guaranteed by the Fourteenth Amendment might be denied by Federal judges and State's agencies. 365 U.S. 174-180.

(c). The Federal remedy is supplementary to the state remedy, and the state remedy need not be sought and refused before a Federal remedy is invoked. 365 U.S. 183.

(d). Misuse of power possessed by virtue of State law and made possible because a wrong-doer is clothed with authority of State law is action taken "under color of" laws within Congress' intended meaning of § 1979. United States v. Classic, 313 U.S. 299; and, Screws v. United

from various illegal actions committed by Dodge dealers on the orders of Chrysler-Dodge Corporation. See Torts, Remedies, Damages, and Agency, Restatements.  See also R.3d. §§ 2.06 (2), 6.09, and § 707(2).  Ionia Management, Inc., (2nd Cir. 2009); and Cooke v. E.F. Drew & Co., 319 F.2d 498 (2nd Cir. 1963);  Schubert v. August Schubert Wagon Co., 164 N.E. 42 (N.Y. 1928) (The Court rejected the defense, stating "[t]he [employer] is not exonerated when the [employee] has. . . escaped liability on the grounds not inconsistent with the commission of a wrong unreleased and unrequited.")

Separately, from about February 9, 2009, to December 14, 2011, the Federal Trade Commission, (FTC) and Consumer Financial Protection Bureau, (CFPB) were jointly collaborating and working together to hold all car manufacturers and their about 100,000 dealers to be held liable for all forms of damages caused and resulting after a dealer's causing other violations of that primary manufacturer's rules, regulations, and a State's criminal or Federal violations of law activities.  Those Federal codes and State law violations consist of: criminal laws, DMV codes, banking/lending discriminations and a variety of coercive retaliations committed by each of those named dealers' criminal acts are similar to the 2nd Circuit's holding in re., Ionia Management, Inc., v. United States, (citation omitted) (2nd Cir. 2009).

Pursuant to the Federal Rules of Civil Procedure, Rules 55 and 64, demand that Fiorani and those 15 State AGs get prompt, combined relief also for Fiorani's four (4) years of his being knowingly harmed, willfully and recklessly injured and deliberately or severely damaged by his being forced to endure from those dozens of dealers, resulting

---

States, 325 U.S. 91;  and 365 U.S. 183-187.

in Fiorani's suffering overwhelming amounts of pecuniary damages that has continued on for more than four years, demanding this Court promptly issue its Orders to those State's AGs, CPD, or DMVs, to fully compensate and indemnify Fiorani for his years of dodges' criminal activities and misconduct.

Chrysler never replied to the Circuit Court's Order to reply. And, Chrysler never answered Fiorani's filed Appeals and Complaints after 14-days, required by the Federal Rules of Civil Procedure Rules 4(a) and 8(a).

Therefore, Plaintiff requests this Court GRANT its Order, jointly or severally, against Chrysler-Dodge and its 20-dealers operating in the below-stated States not later than September 15, 2013, under Virginia, Maryland, West Virginia, Pennsylvania, Delaware, New Jersey, and other States DMVs, including under Virginia's code § 46.2-1500, *et seq.*, to pay Fiorani Chrysler's and Dodge's default judgments under Rules 55 and 64.

Respectfully submitted,

Ross A. Fiorani,
Plaintiffs, *Et al.*,
7115 Latour Court
Kingstowne, VA   22315
(703) 719-0272
(703) 822-1879
valegal53@gmail.com



Welcome to

**101 Lindenwood Drive**
Valleybrooke Corporate Center
Malvern, Pennsylvania 19355

*Please Touch the Screen
to Make a Selection*

BrandywineRealtyTrust

List of Companies

List of Individuals

Building Information